UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

AREALEUS K MORRIS,
     Plaintiff,

vs.                       Case No.: 3:23cv24757/MCR/ZCB

GEO CORPORATION, et al.,
     Defendants.
_____/

## **REPORT AND RECOMMENDATION**

This is a *pro se* prisoner civil rights case filed under 42 U.S.C. §
1983. Presently before the Court is Plaintiff's second amended
complaint. (Doc. 18). Because Plaintiff is an inmate who is proceeding
*pro se* and *in forma pauperis*, the Court must screen the second amended
complaint to determine whether it is frivolous, malicious, fails to state a
claim on which relief may be granted, or seeks monetary relief from a
defendant who is immune. *See* 28 U.S.C. § 1915A (governing civil actions
in which a prisoner seeks redress from a governmental entity or an officer
or employee thereof); *see also Jones v. Bock*, 549 U.S. 199, 202 (2007)
(recognizing that Congress has mandated "early judicial screening of

1

prisoner complaints"). Having reviewed the second amended complaint, dismissal is warranted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) because Plaintiff has failed to state a plausible claim for relief.[1]

## I.    Background

Plaintiff names as Defendants "G.E.O. Corporation," "Medical Provider at Blackwater Correctional Facility (BCF)," Dr. L. Berrios, Warden Gary English, Nurse Simpson, Nurse Derrick, and Florida Department of Corrections "Secretary Representatives" S. Miliken, C. Neel, Michelle Hall, and A. Johns. (Doc. 18 at 2-3). Plaintiff names all Defendants in their individual and official capacities. (*Id.*).

Plaintiff alleges that he "arrived at [BCF] with an ongoing medical issue." (*Id.* at 7). From the complaint, it appears Plaintiff believes he

---

[1] The Court previously gave Plaintiff an opportunity to amend after explaining deficiencies in his prior pleadings. (Docs. 11, 17). Nonetheless, Plaintiff's second amended complaint still fails to state a claim upon which relief could be granted. *See generally Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (stating that a plaintiff typically "must be given at least one chance to amend the complaint before the district court dismisses the action").

2

has "worms" in his body that are causing him pain and discomfort. Despite declaring several medical emergencies, Plaintiff says the medical provider Defendants have informed him he was not infested with worms. Instead, they have told him he needs mental health treatment.

Specifically, Plaintiff alleges that on May 14, 2023, he "declared a medical emergency because of extreme pain in [his] private area." (*Id.*). Plaintiff alleges he arrived at medical, and two nurses told Plaintiff the issue was "all in[his] head." (*Id.*). Plaintiff asserts that on the following day, he declared medical emergencies on two occasions, which he claims were denied without him receiving medical treatment. (*Id.*). Plaintiff alleges BCF's policy of security staff requesting permission from medical to bring an inmate to medical "allows the medical department to deny an inmate medical emergency even without seeing that inmate, based solely on what a nurse writes [in] an inmate's file." (*Id.* at 7-8). Plaintiff alleges he saw Defendant Nurse Simpson a few days later, and she took Plaintiff's "vital signs, [and] told [Plaintiff he] was crazy, and that [he] do[es not] have bugs, worms, or anything else inside [him]." (*Id.* at 8).

Nearly a month later, Plaintiff alleges "a staff member who wanted to remain anonymous" informed Plaintiff "they have an unwritten policy to limit care as much as possible" such as "[d]enying outside medical treatment that may be too costly." (*Id.*).

Plaintiff then saw Defendant Nurse Derrick on June 28, 2023, when he complained of pelvic pain. (*Id.*). Although Plaintiff alleges his pelvic area was swollen with lumps, Nurse Derrick said there were no lumps. (*Id.*). Nurse Derrick gave Plaintiff pain medication and sent him back to the dorm. (*Id.*). A few days later, Plaintiff returned to medical where he saw "two nurses." (*Id.*). Plaintiff informed the nurses that his "testicles are half eaten, and they have holes in them from where worms have eaten their way out of them." (*Id.*). Plaintiff requested that the nurses order a CAT scan or ultrasound, but instead they informed Plaintiff that he "needed to see mental health." (*Id.*).

Plaintiff alleges he next complained of pelvic pain on July 6, 2023, but he was sent back to his dorm without adequate treatment. (*Id.* at 8-9). Plaintiff claims he declared seven medical emergencies between July 7 and August 14, 2023, but he was sent back without being seen. (*Id.*).

4

According to Plaintiff, on July 10, 2023, he declared a medical emergency because he could see a "worm up [his] nose" that was "as big around as an ink pen." (*Id*.). He was informed to submit a sick call request without having his nose examined. (*Id*.).

Plaintiff claims he was eventually examined by Defendant Dr. Berrios on August 23, 2023. In response to Plaintiff's complaints, Dr. Berrios ordered an X-ray. (*Id*. at 9). Although Plaintiff says "you could see the worm running up my neck," Dr. Berrios did not prescribe any treatment after ordering the X-ray. (*Id*. at 9-10). In February of 2024, Plaintiff says he sought medical treatment for the "worms" yet again. (*Id*. at 10). According to Plaintiff, a "worm worked its way out of [his] lip, and went back in a short distance later." (*Id*.). The medical provider informed Plaintiff that the "worm" was actually scar tissue. (*Id*.).

Plaintiff alleges he was informed by staff at the prison "to stop submitting sick calls, and medical emergency's [sic] regarding your bug or worm issue." (*Id*. at 10). Plaintiff claims he saw Dr. Berrios again on a later date because the "worms" were in his throat and stomach. (*Id*. at 11). After conducting an examination, Dr. Berrios diagnosed Plaintiff

with a throat infection and prescribed antibiotics.  (*Id*.).  According to Plaintiff, as of the date he wrote the second amended complaint, the "worms are visible, painful, and dangerous since they are in my face and throat."  (*Id*. at 10).  Plaintiff claims that Defendants' failure to appropriately treat his "worm" infestation constitutes deliberate indifference to a serious medical need in violation of the Eighth Amendment.  (*Id*. at 12-13).  In terms of relief, Plaintiff seeks a declaratory judgment, an injunction, and money damages.  (*Id*.).[2]

## II.    Statutory Screening Standard

To survive dismissal at the screening phase, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

---

[2] Plaintiff has filed a motion, separate from his complaint, seeking a temporary restraining order.  (*See* Doc. 8).  The Court has previously recommended denying that relief.  (Doc. 12).

Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (internal quotation marks omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (internal quotation marks omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

### III.   Discussion

## A. Plaintiff has not plausibly alleged a deliberate indifference claim.

The Court previously advised Plaintiff that his allegations failed to plausibly allege a deliberate indifference claim against the medical personnel and the entities he names as Defendants.  Plaintiff has filed a second amended complaint that still fails to plausibly state a claim for the reasons below.

### 1. Medical Defendants[3]

The Eighth Amendment forbids the "inflict[ion]" of "cruel and unusual punishments."  U.S. Const. amend. VIII.  The Supreme Court has held that it is "cruel and unusual punishment" for prison officials to act with "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

That means prison officials are obligated to provide prisoners with "minimally adequate medical care."  *Harris v. Thigpen*, 941 F.2d 1495,

---

[3] The medical Defendants are as follows: Dr. Berrios, Nurse Simpson, and Nurse Derrick.  (Doc. 18 at 2).

1504 (11th Cir. 1991). The deliberate indifference standard is much higher than simple negligence or medical malpractice. *Id.* at 1505. The Eighth Amendment does not require a prisoner's medical care to be "perfect, the best obtainable, or even very good." *Id.* at 1510 (cleaned up). Indeed, the deliberate indifference standard is only met if medical care is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 1505-06 (cleaned up). After all, it is "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

To prevail on a deliberate indifference claim, a plaintiff must satisfy two prongs—one objective, one subjective. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Satisfying the objective prong requires a plaintiff to show an "objectively serious medical need." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (cleaned up). A medical need is objectively serious if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person

would easily recognize the necessity for a doctor's attention—that, if left unattended, poses a substantial risk of serious harm." *Id.* (cleaned up). To satisfy the subjective prong, a plaintiff must prove that prison officials (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) acted with more than mere negligence. *Id.* The plaintiff's burden of establishing the objective and subjective prongs is "steep." *Id.*

Here, Plaintiff's second amended complaint fails to plausibly allege a deliberate indifference claim against the medical Defendants. Assuming *arguendo* that Plaintiff's supposed "worm" infestation constitutes an objectively serious medical need, Plaintiff has not demonstrated that the medical Defendants recklessly disregarded a serious risk of harm to Plaintiff. Plaintiff's complaint alleges that he was repeatedly seen by Defendant nurses, determined not to have "worms," given pain medication on at least one occasion, and recommended to pursue mental health treatment. With regard to Defendant Dr. Berrios, he examined Plaintiff on two occasions. On one occasion, he ordered an X-ray and on the other, he determined Plaintiff had a throat infection

10

that required an antibiotic.  On neither occasion did Dr. Berrios find that any treatment for a "worm" infestation was indicated.

Based on the allegations in the second amended complaint, it is clear that the Defendant nurses and Defendant Dr. Berrios determined Plaintiff was not suffering from a "worm" infestation that required medical intervention.  Plaintiff disagrees with that determination and thinks he has a "worm" infestation that should have been treated differently.  It is apparent that there is a difference of opinion between Plaintiff and the medical Defendants regarding what, if any, illness Plaintiff has and how it should be treated.  But it is well established that a difference in opinion regarding medical treatment does not constitute deliberate indifference.  *See Simpson v. Holder*, 200 F. App'x 836, 839-40 (11th Cir. 2006) (dismissing deliberate indifference claim that was based on a difference of opinion between prisoner and medical staff regarding his need for a medical device); *see also Derks v. Bassa*, No. 22-13202, 2023 WL 5664197, at *2 (11th Cir. Sept. 1, 2023) ("Deliberate indifference is not a simple difference in medical opinions."); *Barnhill v. Inch*, No.: 4:18-cv-564, 2020 WL 6049559, at *8 (N.D. Fla. Aug. 28, 2020) (citing *Harris*,

941 F.2d at 1507) ("Where the inmate has received medical attention and the dispute is over the propriety of that course of treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments made.").

Additionally, although Plaintiff claims more testing (i.e., a CAT scan or ultrasound) should have been ordered by the medical Defendants, whether medical providers "should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment," as opposed to deliberate indifference. *See Harris v. Prison Health Servs.*, 706 F. App'x 945, 952 (11th Cir. 2017) (finding that a prison physician was not deliberately indifferent for failing to order X-rays or an MRI); *see also Baez v. Rogers*, 522 F. App'x 819, 821 (11th Cir. 2013) (affirming dismissal of deliberate indifference claim because the complaint "alleges only a difference of medical opinion as to what course of treatment was appropriate"). The same is true with respect to Plaintiff's belief that he should have been referred to a specialist. *See Hilton v. McHugh*, 178 F. App'x 866, 871 (11th Cir. 2006) (finding no deliberate indifference where prison physician failed to refer inmate to a

specialist); *see also Phillips v. Robbins*, 752 F. App'x 759, 764 (11th Cir. 2018) (explaining that a nurse who "made a medical judgment call" that a referral was unnecessary did not violate the Eighth Amendment).

At the end of the day, Plaintiff believes he has a particular medical issue (i.e., a "worm" infestation). The medical Defendants have concluded he does not have that medical issue, and instead has a mental health problem. The medical Defendants, therefore, have not prescribed treatment for the "worm" infestation. Because a disagreement over the type of medical treatment that is warranted cannot form the basis of a deliberate indifference claim, Plaintiff has failed to state a plausible Eighth Amendment claim against the medical Defendants.

### 2. Defendant G.E.O. Corporation and "Medical Provider"

Plaintiff has also named as Defendants G.E.O. Corporation and its "Medical Provider." (Doc. 18 at 2). A civil rights plaintiff suing a governmental entity[4] under § 1983 must show that (1) "his constitutional

---

[4] Although a private company, Defendant G.E.O. Corporation, and the company it uses to provide medical services to inmates, are considered governmental entities under section 1983 because they are performing traditional governmental functions—i.e., operating a prison and

rights were violated"; (2) the entity "had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). In other words, Plaintiff must identify a particular "policy" or "custom" that caused the constitutional injury. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . [a] custom is a practice that is so settled and permanent that it takes on the force of law." *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999) (cleaned up). To establish a policy, a plaintiff must identify either (1) an officially promulgated policy

---

providing medical care to prisoners. *See Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (holding that municipalities or their "functional equivalent[s]" are subject to suit under § 1983); *see also Denham v. Corizon Health, Inc.*, 675 F. App'x 935, 940 (11th Cir. 2017) (determining that a prison contract medical provider is treated as a governmental entity under § 1983 because it is performing the traditional governmental function of inmate medical care).

or (2) an unofficial custom or practice shown through the repeated acts of a final policymaker. *Glech v. Clayton Cnty.*, 335 F.3d 1326, 1329-30 (11th Cir. 2003) (citing *Monell*, 436 U.S. at 690–91, 694).

Here, Plaintiff has not sufficiently alleged a custom or policy on behalf of Defendant G.E.O. Corporation or its "Medical Provider" that caused the alleged constitutional violation. Liberally construed, the second amended complaint alleges the existence of a policy that requires security staff members to consult with medical staff members before bringing an inmate to the prison's medical unit. (Doc. 18 at 8-9). Plaintiff alleges this policy allows medical staff "to deny an inmate['s] medical emergency even without seeing that inmate." (*Id.*). As the Court previously advised Plaintiff, this allegation appears to be little more than a summarization of Plaintiff's own experience as opposed to a policy, practice, or custom. And such an individual, isolated experience is insufficient to establish a policy, practice, or custom for § 1983 purposes. *See Floyd v. City of Miami Beach*, 730 F. App'x 838, 842 (11th Cir. 2018) (holding a *pro se* plaintiff failed to plausibly allege a policy or custom based on the plaintiff's "own experience" of a single, isolated incident);

15

*see also Ballard v. Wellpath, LLC*, No. 1:22-cv-320, 2023 WL 4564956, at
*5 (N.D. Fla. June 14, 2023) (dismissing an inmate's deliberate
indifference claim because the inmate had not alleged a custom or policy
when he merely alleged that "medical staff ignore[d] his needs").

It also appears that Plaintiff has alleged Defendants G.E.O.
Corporation and its "Medical Provider" have a policy of limiting care  in
order to save money.  (Doc. 18 at 8).  But Plaintiff includes insufficient
facts to support his conclusory assertion that such a policy exists and that
it caused his alleged constitutional injury.  When confronted with similar
allegations in the past, courts have found them insufficient to state a
claim.  *See, e.g., Scayles v. Inch*, No. 3:19-cv-1311, 2022 WL 35991, at *9
(M.D. Fla. Jan. 4, 2022) (dismissing claim that prison medical provider
had a policy of delaying treatment in order to save money because the
plaintiff's allegations were conclusory and lacking in factual support);
*McClure v. Hyers*, No. 5:18-cv-32, 2020 WL 5649332, at *9 n.8 (S.D. Ga.
Sept. 1, 2020) (explaining that "Plaintiff's vague and generalized
allegation that Defendants make medical care decisions based on cost

concerns is insufficient to constitute a discernible policy, custom, or practice").

Moreover, Plaintiff has failed to plausibly allege the required causal connection between the alleged cost-saving policy and his constitutional injury. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (requiring a "direct causal link" between a "policy or custom and the alleged constitutional deprivation"). The second amended complaint alleges that Plaintiff did not receive treatment for his "worm" infestation because the medical providers concluded treatment was unwarranted because there was no "worm" infestation. Put another way, Plaintiff has failed to allege that the "moving force" behind the non-treatment for his "worm" infestation was a cost-cutting policy as opposed to a medical conclusion that no such treatment was clinically indicated. *See McClure*, 2020 WL 5649332, at *9 (finding that prisoner failed to plausibly allege that a policy or custom of denying medical care to save money was the driving force of the decision not to provide the prisoner with an MRI, physical therapy, or pain medication). Accordingly, Plaintiff has failed to

17

plausibly allege a deliberate indifference claim against Defendants
G.E.O. Corporation and its Medical Provider.

## B. Plaintiff has failed to plausibly allege supervisory liability claims.

Plaintiff has also named supervisory officials from the prison
system as Defendants.  More specifically, BCF Warden Gary English, and
S. Miliken, C. Neel, Michelle Hall, and A. Johns from the Florida
Department of Corrections (FDOC) Secretary's office.  (Doc. 18 at 3).  As
explained below, Plaintiff has failed to state a plausible supervisory
liability claim against these prison officials.

Supervisory government officials may not be held liable for the
unconstitutional conduct of their subordinates under a theory of
*respondeat superior*.  *See Monell*, 436 U.S. at 691 (finding no vicarious
liability under 42 U.S.C. § 1983).  "Because vicarious liability is
inapplicable to [ ] § 1983 suits, a plaintiff must plead that each
Government-official defendant, through the official's own individual
actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Thus,
"each Government official, his or her title notwithstanding, is only liable

18

for his or her own misconduct." *Id.* at 677. "Supervisors are liable under section 1983 either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (cleaned up). A plaintiff may establish a causal connection by showing: (1) a history of widespread abuse that put the supervisor on notice of the need to correct the alleged deprivation and a failure to take corrective action; (2) the supervisor's improper custom or policy led to the violation of plaintiff's rights; or (3) there are sufficient facts to support an inference that the supervisor directed others to act unlawfully or knew they were acting unlawfully and failed to stop them. *Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (citing *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008)). A supervisor's denial of a prisoner's grievances is insufficient to establish the type of personal participation required for section 1983 liability. *See Hoever v. Belleis*, 703 F. App'x 908, 912 (11th Cir. 2017) (dismissing prisoner's claim against supervisors on the ground that prisoner's "allegation that supervisors denied grievances . . . was

insufficient to establish that the supervisors instigated or encouraged unlawful conduct.").

Looking to the second amended complaint, Plaintiff's allegations against Defendants S. Miliken, C. Neel, Michelle Hall, and A. Johns are based on their "response[s] to [Plaintiff's] grievance appeal." (Doc. 18 at 11). More specifically, Plaintiff says these Defendants failed to take appropriate action to address the issues raised in his grievances. Aside from their involvement in the handling of his grievances, Plaintiff alleges no other direct participation by these Defendants. Because "[m]erely denying a grievance, without personally participating in the unconstitutional conduct . . . is insufficient to establish § 1983 liability," *Brown v. Comerford*, No. 3:13cv572, 2014 WL 3586257, at *5 (N.D. Fla. July 21, 2014), Plaintiff has failed to state a plausible section 1983 claim against Defendants S. Miliken, C. Neel, Michelle Hall, and A. Johns.

As for Warden English, Plaintiff has alleged that: "Warden English knows of the systemic failure and denial of care his employees are responsible for . . . [s]till, he failed to act, and in fact, he helped foster the action by his staff, by [his] inaction." (Doc. 18 at 10-11). Plaintiff further

alleges that Warden English "failed to remedy any of the violations" of
Plaintiff's rights by the medical staff, despite Plaintiff raising the issues
in grievances.   (*Id*. at 10).   The allegations in the second amended
complaint show that Plaintiff is attempting to hold Warden English
vicariously liable for the actions of others, as opposed to actions he
personally took.   Although Plaintiff alleges Warden English failed to
properly respond to grievances, a warden's response to grievances is not
a sufficient basis for supervisory liability.   *See Kline v. Maiorana*, No.
3:21cv1006, 2022 WL 980280, at *4 (N.D. Fla. Feb. 8, 2022) ("Filing a
grievance with a supervisory person does not, alone, make the supervisor
liable for the allegedly violative conduct brought to light by the grievance,
even if the grievance is denied.").   Plaintiff's second amended complaint
fails to plausibly allege any facts showing "how the Warden prevented
treatment, refused treatment, or personally participated in any medical
decision other than through the denial of Plaintiff's grievance."   *Id*.
Accordingly, Plaintiff has failed to state a plausible supervisory liability
claim against Defendant Warden English.

## IV.   Conclusion

21

For the reasons above, it is respectfully **RECOMMENDED** that:

1. Plaintiff's amended complaint (Doc. 18) be **DISMISSED** for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1);

2. The Clerk of Court be directed to close this case.

At Pensacola, Florida this 23rd day of May 2024.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## Notice to the Parties

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.